UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| ECONOMY PREMIER ASSURANCE COMPANY and METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 4:07-cv-8-WGH-SEB |
| JAMES WERNKE, JEFF WERNKE, NANCY WERNKE, STEVE WANSTRATH, MONA WANSTRATH, and JESSE WANSTRATH, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**ENTRY ON PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT**

**Introduction**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on Plaintiffs' Motion for Summary Judgment filed July 11, 2007. (Docket Nos. 27-29).[1] The Wanstrath Defendants filed their Memorandum in Opposition on August 23, 2007. (Docket No. 34). Plaintiffs filed their Reply in Support on August 30, 2007. (Docket No. 38).

---

[1]In their Case Management Plan filed May 18, 2007, the parties consented to Magistrate Judge jurisdiction in this case. (Docket No. 21). District Judge Sarah Evans Barker entered an Order of Reference on May 23, 2007. (Docket No. 23).

## Background

Economy Premier Assurance Company ("Economy") issued a Homeowners Insurance Policy to Jeff and Nancy Wernke, Policy Number 2886092080, for the policy period of July 26, 2004, to July 26, 2005. (Complaint at Ex. A ("Economy Policy")).  The Economy Policy provides a variety of specified coverages, including certain forms of liability coverage. (Economy Policy at I-1).  The limit of liability coverage is $500,000.  (*Id.* at Declarations page).  The Wernkes' son, James, is an insured under the Economy Policy.  (*Id.* at A-2).  Furthermore, the Economy Policy states in pertinent part:

> **We** will pay all sums for **bodily injury** and **property damage** to others for which the law holds **you** responsible because of an **occurrence**[2] to which this coverage applies.  This includes prejudgment interest awarded against **you**.
> **We** will defend **you**, at **our** expense with counsel of **our** choice, against any suit seeking these damages.  **We** may investigate, negotiate, or settle any suit.  **We** are not obligated to defend any claim or suit seeking damages not covered under this policy.
> \* \* \* \* \*
> **We** will pay the reasonable **medical expenses** that are incurred or medically ascertained within three years from the date of the accident causing **bodily injury**.  This coverage does not apply to **you**.  This coverage does apply to others who sustain **bodily injury** as a result of an accident, while they are:
> 1.     on the **insured premises** with **your** permission; or
> 2.     off the **insured premises**, if the **bodily injury**:
>        a.     arises out of a condition of the **insured premises** or immediately adjoining ways;
>        b.     is caused by **your** activities;
> \* \* \* \* \*

---

[2]Occurrence is defined in the Economy Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the term of the policy." (Economy Policy at A-2).

> **We** do not cover **bodily injury** or **property damage** which is reasonably expected or intended by **you** or which is the result of **your** intentional and criminal acts or omissions. This exclusion is applicable even if:
> A.   **you** lack the mental capacity to govern **your** conduct;
> B.   such **bodily injury** or **property damage** is of a different kind or degree than reasonably expected or intended by **you**; or
> C.   such **bodily injury** or **property damage** is sustained by a different person than expected or intended by **you**.
> This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.
> However, this exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force by **you** to protect persons or property.

(*See* Economy Policy at I-1 (emphasis added)).

In addition to the Economy Policy, Metropolitan Property and Casualty Insurance Company ("Metropolitan") issued a Personal Excess Liability Policy to Jeff and Nancy Wernke, Policy Number 1846949950, for the policy period August 10, 2003, to August 10, 2004.  (Complaint at Ex. B ("Metropolitan Excess Policy")).  The Metropolitan Excess Policy also provides a variety of specified coverages, including certain forms of liability coverage.  (Metropolitan Excess Policy at 1). The limit of liability coverage is $1,000,000 in excess of underlying homeowner's coverage of $100,000.  (*Id.* at Declarations page).  James Wernke again is an insured under the Metropolitan Excess Policy.  (*Id.* at 4).  The Metropolitan Excess Policy provides in pertinent part:

> **We** will pay all sums in excess of the **retained limit** for **damages** to others caused by an **occurrence**[3] for which the law holds an

---

[3]Occurrence is defined in the Metropolitan Excess Policy as follows: "an accident, including continuous or repeated exposure to the same condition that results during the policy period in **personal injury** or **property damage**." (Metropolitan Excess Policy at 4).

-3-

> **insured** responsible and to which this coverage applies.
> \* \* \* \* \*
> **We** will defend the **insured** at **our** expense with attorneys of **our** choice, against any suit or claim covered under this policy but not covered under any **underlying policy** or any other insurance available to the **insured**.
> \* \* \* \* \*
> *This policy does not apply to **personal injury** or **property damage**:*
> A.   *resulting from any intentional act committed by an **insured** or at the direction of any **insured**.  However, this exclusion does not apply to **personal injury** or **property damage** resulting from the use of reasonable force by **you** to protect persons or property.*

(*See* Metropolitan Excess Policy at 1-2, Amendatory Endorsement M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 (emphasis added)).

On August 4, 2004, James Wernke struck Jesse Wanstrath in the face, breaking his jaw.[4] The Wanstraths brought a civil lawsuit against the Wernkes in Dearborn Superior Court.  (Complaint at Ex. C ("Wanstrath Lawsuit")).  The Wanstraths allege that James Wernke "did knowingly, intentionally and/or recklessly strike plaintiff, Jesse Wanstrath, in the face and mouth." (*Id.* ¶ 2).  The Wanstraths further allege a negligent supervision claim, as well as a claim for statutory liability of a parent for the intentional acts of their minor child pursuant to Indiana Code 34-31-4-1.  (*Id.* ¶ 6, 8).  The Wanstraths admit that James Wernke hit Jesse Wanstrath in the jaw, that James Wernke pushed Jesse

---

[4]As a result of his actions, the Dearborn Circuit Court, Juvenile Division, determined that James Wernke had engaged in "fighting or in tumultuous conduct," that his actions violated section 35-45-1-3(2) of the Indiana Code, and that he was guilty of disorderly conduct which was a Class B misdemeanor.  (Brief in Support of Motion for Summary Judgment at Ex. 2).

Wanstrath twice before James Wernke actually hit Jesse Wanstrath in the jaw, and that James Wernke was the aggressor and caused the altercation.  (Brief in Support of Motion for Summary Judgment at Ex. 1).

In response to the Wanstrath Lawsuit, Economy and Metropolitan filed a Complaint For Declaratory Judgment against the Wanstraths and the Wernkes on January 18, 2007, regarding coverage for the Wanstraths' claims.  In their Complaint, Plaintiffs assert that the allegations in the Wanstrath Lawsuit are not covered by either the Economy Policy or the Metropolitan Excess Policy because (1) there was no "occurrence" under the policies; (2) the Intentional Loss Exclusions of the policies exclude coverage under these circumstances; and (3) since the allegations against James Wernke are not covered by the policies, the allegations against Jeff and Nancy Wernke are also not covered by the policies. Plaintiffs further asserted that the allegations in the Wanstrath Lawsuit are not covered by the policies because the Wernkes did not give Plaintiffs prompt notice of the claim.

Plaintiffs have now moved for summary judgment arguing that there are no genuine issues of material fact surrounding the incident between James Wernke and Jesse Wanstrath and that they are entitled to judgment as a matter of law because the incident is not covered by either of the applicable insurance policies. Plaintiffs also argue that Defendants' claims are barred because Defendants did not provide prompt notice of their claims.  For the following reasons, the Court

agrees with Plaintiffs and concludes that their motion for summary judgment must be granted.[5]

## Summary Judgment Standard

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The motion should be granted so long as no rational fact finder could return a verdict in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, a court's ruling on a motion for summary judgment is akin to that of a directed verdict, as the question essentially for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. When ruling on the motion, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences therefrom in that party's favor. *Id.* at 255. If the nonmoving party bears the burden of proof on an issue at trial, that party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Silk*

---

[5]The Court notes that a Default Judgment was entered against Defendants James Wernke, Jeff Wernke and Nancy Wernke. Even though the Wernkes were the policyholders for both the Economy Policy and the Metropolitan Excess Policy, this declaratory judgment action still remains intact pursuant to section 34-14-1-11 of the Indiana Code, which explains that all parties are to be made a part of a declaratory judgment action if the declaration could affect their claims. Clearly, the Wanstraths' claims could be affected by this declaratory judgment action.

*v. City of Chicago,* 194 F.3d 788, 798 (7th Cir. 1999). Lastly, the moving party need not positively disprove the nonmovant's case; rather, it may prevail by establishing the lack of evidentiary support for that case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

## Analysis

The Wanstraths filed suit against the Wernkes alleging three separate causes of action. They allege that James Wernke committed an intentional tort, that the parents negligently supervised James Wernke, and that there is statutory liability of a parent for the intentional acts of their minor child. However, because the intentional tort and the statutory claim both fail if the Court concludes that the insurance policies do not cover intentional acts, the only two issues before the Court are (1) whether or not the two insurance policies at issue in this case provide coverage for Jesse Wanstrath's injuries, and (2) does the intentional acts exclusion in the two insurance policies preclude the Wanstraths' negligent supervision claim.

**A.      Indiana Law Applies to this Dispute**

This is a suit based on the court's diversity jurisdiction. While a federal court sitting in diversity jurisdiction shall apply its own procedural laws, it must apply the substantive laws of the state in which it sits. *First Nat. Bank and Trust Corp. v. American Eurocopter Corp.,* 378 F.3d 682, 689 (7th Cir. 2004). The Court must, therefore, apply Indiana substantive law.

**B.   The Insurance Contracts Exclude Coverage of James Wernke's Intentional Acts**

The first issue presented by the parties is an issue of insurance contract interpretation which is primarily a question of law to be resolved by the Court. *Sharp v. Indiana Union Mut. Ins. Co.,* 526 N.E.2d 237, 239 (Ind.Ct.App. 1988). In instances where an insurance contract is clear and unambiguous, the language within the contract must be given its plain meaning. *Allstate Ins. Co. v. Boles,* 481 N.E.2d 1096, 1101 (Ind. 1985). However, when the contract language contains an ambiguity, the insurance policy is to be construed strictly against the insurer, and the policy language is viewed from the standpoint of the insured. *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 528 (Ind. 2002). An insurance policy is ambiguous only when reasonable persons would differ as to the meaning of its terms. *Id.*

Here, both the Economy Policy and the Metropolitan Excess Policy are clear and unambiguous. The Economy Policy does not cover bodily injury which is reasonably expected or intended by an insured. And, the Metropolitan Excess Policy does not cover personal injury resulting from any intentional act. Defendants argue that there is a dispute over whether James Wernke intended to break Jesse Wanstrath's jaw. However, Defendants have provided no evidence to support this contention. The only evidence in the record demonstrates that James Wernke intentionally struck Jesse Wanstrath in the face during a fight. Based on the only evidence in the record, there is no coverage under either policy. First, with regard to the Economy Policy, any injury that is reasonably expected or intended is excluded from coverage, and a broken jaw is certainly a reasonably

expected injury that can result from being struck in the face.  Second, the Metropolitan Excess Policy does not cover injuries that result from an intentional act, and the facts in the record indicate that Jesse Wanstrath's injuries clearly were the result of such an act.  Given that both policies at issue in this case exclude coverage for James Wernke's intentional acts, Plaintiffs' Motion for Summary Judgment is **GRANTED,** and the Wanstraths' intentional tort claim and statutory claim are **DISMISSED.**[6]

**C.     There Is No Coverage for the Wanstraths' Negligent Supervision Claim**

The Wanstraths also alleged that James Wernke was negligently supervised by his parents.  In determining whether a claim of negligent supervision is barred by an insurance policy's "intentional acts" exclusion, Indiana courts have asked whether the negligent supervision was the proximate cause of an individual's injuries.  *Frankenmuth Mut. Ins. Co. v. Williams by Stevens,* 690 N.E.2d 675, 678 (Ind. 1997).  "Where a person's negligence creates a situation in which a third party might commit an intentional tort or criminal act, the negligence is not a proximate cause of any resulting injuries unless the negligent person realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime."  *Id.*  Put another way, unless the negligent supervision was the "efficient and predominating cause" of an individual's injuries, there is no coverage.  *Illinois*

---

[6]Because the Court concludes that there is no coverage under either insurance policy, the Court declines to address Plaintiffs' argument that they were not provided prompt notice of the claim.

*Farmers Ins. Co. v. Wiegand,* 808 N.E.2d 180, 189 (Ind.Ct.App. 2004); *see also Wright v. American States Ins. Co.,* 765 N.E.2d 690, 696-97 (Ind.Ct.App. 2002).

The Wanstraths, in this case, have provided no evidence that suggests that the Wernkes knew or should have known that James Wernke was a danger to Jesse Wanstrath. Absent such evidence, the Court concludes that their alleged negligent supervision was not the efficient and predominating cause of Jesse Wanstrath's injuries. Hence, the negligent supervision claim is barred by the intentional acts exclusion and is **DISMISSED.**

## Conclusion

For the reasons outlined above, Plaintiffs' Motion for Summary Judgment is **GRANTED.** A Declaratory Judgment is entered in favor of Plaintiffs, and this action is **DISMISSED.**

**SO ORDERED.**

**Dated:**  October 29, 2007

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Kevin C. Tyra
TYRA SWEETIN & BLEEKE PC
kevin.tyra@tycolaw.com

Donald Meyer Jr.
djmlaw@fuse.net